IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TRISTAR SPORTING ARMS, LTD, a Kansas Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 07-0003-CV-W-ODS ) |
| ATA ARMS, a Turkish Corporation, and JOHN DOE Number 1, | ) ) ) |
| Defendants. | ) ) |

<u>ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS, (2) DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND (3) DIRECTING
PLAINTIFF TO FILE AN AMENDED COMPLAINT</u>

Pending are (1) Defendant ATA Arms' Motion to Dismiss (Doc. # 14) and Plaintiff's Motion for Preliminary Injunction (Doc. # 3). Both motions are denied.

I. BACKGROUND

Plaintiff is a Kansas corporation with its principal place of business in North Kansas City, Missouri. Its business consists of importing firearms for distribution wholesale. Defendant ATA Arms ("ATA") is a Turkish company with a principal place of business in that country; it is in the business of manufacturing shotguns. Defendant John Doe Number One is an American gun importer with whom ATA has allegedly entered an exclusive gun importation agreement. Complaint, ¶¶ 2-4.

Plaintiff alleges it had a relationship with ATA stretching over "several" years. Plaintiff's representative(s) traveled to Istanbul, Turkey to view shotguns offered for sale by ATA. Upon returning to the United States, Plaintiff would submit orders to ATA. In 2006, Plaintiff's representative, Ghassan Bader, visited ATA's facility in Turkey and discussed Plaintiff's needs for 2007. Complaint, ¶¶ 11-12. Afterwards, on August 1, 2006, Bader sent an e-mail to ATA asking for finalized pricing information for 2007 and information about the number of shotguns ATA could manufacture. ATA provided the manufacturing information, but indicated the prices for 2007 were not finalized.

Complaint, ¶¶ 13-14. Nonetheless, Plaintiff sent ATA an order for shotguns. Complaint, ¶ 15. Approximately one month later, Plaintiff again requested ATA provide the 2007 prices so it could begin finalizing orders with its own customers. ATA provided the pricing information in early September 2006. During these and subsequent e-mail exchanges, Plaintiff indicated it had committed to supply its customers with over five thousand shotguns. Plaintiff also requested information about variations requested by its customers. "On or about October 10, 2006, Bader traveled to Istanbul, Turkey to finish negotiating the shotgun orders for 2007 with ATA." Complaint, ¶ 24. While in Turkey, Bader placed an order for 5,052 shotguns, which ATA allegedly agreed to manufacture and ship. Complaint, ¶ 25. Bader returned to the United States on October 14; less than one week later, ATA e-mailed Plaintiff "and stated that it had, based on the evaluation of other offers and agreements, decided to enter into an exclusive agreement with another company to export shotguns to the United States starting in 2007." Complaint, ¶ 37. Plaintiff alleges significant financial damage if it is unable to supply the shotguns it promised to its customers, "plus irreparable damage to its business reputation and standing." Complaint, ¶ 41. Count I seeks an injunction preventing ATA from repudiating the alleged contract, Count II seeks specific performance on the contract, Count II seeks specific performance based on promissory estoppel, Count IV asserts a claim for fraud, Count V asserts a claim for breach of contract, and Count VI asserts a claim for tortious interference against the unknown party with whom ATA has entered an exclusive contract.

## II. DISCUSSION

### A. Personal Jurisdiction

ATA contends it is not subject to personal jurisdiction in Missouri. "While it is true that the plaintiff bears the ultimate burden of proof . . . jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Dakota Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir.

2

1991). In this case, the Court has elected to decide the issue without holding an evidentiary hearing. "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual disputes in favor of that party." Id. (citations omitted).

When sitting in a diversity action, the Court may assume jurisdiction over a nonresident defendant to the extent permitted by Missouri law so long as the exercise is consistent with the Due Process Clause.[1] Missouri courts consistently extend the reach of their jurisdiction to the limits permitted by the Constitution, see Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir. 1984), so the entire analysis dovetails.

The "minimum contacts" analysis required by the Fourteenth Amendment requires consideration of the following factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987). "Jurisdiction is proper where there is a substantial and continuing relationship purposefully made with a party in the forum state, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), so long as 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.' International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)." CPC-Rexcell, Inc. v. La Corona Foods, Inc., 912 F2d 241, 243 (8th Cir. 1990).

---

[1]In State ex rel. K-Mart Corp. v. Holliger, the Missouri Supreme Court rejected the "remarkable assertion that the only means by which jurisdiction may be obtained over a foreign corporation is through the state's long-arm statute," 986 S.W.2d 165, 166 (Mo. 1999) (en banc), and instead held that a corporation's general business activity in a state could give rise to jurisdiction even if the suit does not arise from those contacts. Consequently, ATA's insistence that its activities in Missouri were not covered by the long-arm statute – even if true – is not entirely conclusive of the issues at hand.

3

> The nonresident defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court there, and it is essential that there be some act by which the defendant purposefully avails [it]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Purposeful availment means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted).

There are two broad categories of personal jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudiential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. (quotation omitted). The parties' discussion blurs these distinctions. In considering the possibility of specific jurisdiction, one necessarily focuses on the transaction at issue and ignores ATA's prior contacts with Missouri. This leaves a paucity of contact with the state, as most of the activity was directed from Plaintiff in Missouri to ATA in Turkey, and the contract was consummated (if at all) in Turkey.

On the other hand, in considering the possibility of general jurisdiction, the Court is obligated to consider ATA's prior contacts with Missouri and determine whether they are sufficient to satisfy the requirements of the Due Process Clause. Unfortunately, the information provided to the Court is insufficient to allow a determination at this juncture. Plaintiff and ATA engaged in business transactions over the preceding two years, and ATA would have been subject to jurisdiction in Missouri for any dispute that arose from those transactions. This does not mean, however, that those transactions were of such a nature and character that haling ATA into court in Missouri for other matters – such as, as in this case, negotiations over subsequent and different transactions – is consistent with "notions of fair play and substantial justice."

4

Plaintiff contends ATA's regular business activities involve significant contact with the United States, including manufacturing firearms in a manner consistent with United States' laws and sending its products for sale into this country. This is insufficient to establish minimum contacts with *Missouri*. E.g., Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 609-10, 614-15 (8th Cir. 1998) (Jamaican brewer dealt with importers, who then entered agreements with distributors; brewer had no reason to know that one of those distributors would be in Minnesota); Soo Line R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 527-28, (8th Cir. 1991) (Canadian manufacturer of railroad cars had no reason to know that it would be haled into court in Minnesota to defend a suit alleging a defective car caused an accident simply because the car was manufactured in compliance with standards used in Canada, Mexico, and the forty-eight contiguous United States). These facts do not justify subjecting ATA to suit in any particular state, much less Missouri.

If general jurisdiction exists over ATA in Missouri, it must be due to its actions directed toward and activities in this state. The Court lacks sufficient information to make a decision about this issue, so the motion to dismiss must be denied.

B. Failure to State a Claim

*1. Contract/Promissory Estoppel*

ATA next contends the contract claims (including the claims seeking promissory estoppel) case should be dismissed for failure to state a claim, contending the Complaint[2] fails to state claims under Missouri law. There are several issues that arise under Missouri law, including the statute of frauds, whether a meeting of the minds took place, and the apparent lack of agreement on price. However, the Court is not

---

[2]ATA's arguments also rely on the content of e-mail messages attached as exhibits to the Complaint. Because they are exhibits to the Complaint, there is no need to convert ATA's motion to a motion for summary judgment. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).

5

convinced any of these issues are relevant because the Court is not convinced Missouri law governs this matter.

The Court is obligated to apply Missouri's choice of law rules, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), and in contract cases Missouri applies the most significant relationship test. This requires consideration of (1) the place the contract is made, (2) the place negotiations occurred, (3) the place performance is to take place, (4) location of the subject matter of the contract, and (5) the domicile, nationality and place of business of the parties. E.g., Highwoods Properties, Inc. v. Executive Risk Indem., Inc., 407 F.3d 917, 920 (8th Cir. 2005).

If a contract was made, it was made while Bader was in Turkey in October 2006. While e-mails were exchanged between Missouri and Turkey, the most important aspects of the negotiation – Bader's initial and final visits – occurred in Turkey. The contract purportedly calls for ATA to manufacture shotguns with certain specifications; while the shotguns are to be shipped to Missouri, the manufacturing is to take place in Turkey. Finally, as noted earlier, Plaintiff is a Kansas corporation doing business in Missouri, and ATA is a Turkish company.

The Court is of the present view that Turkey has the most significant relationship to the matter. The contract was purportedly made there, Plaintiff sent a representative to Turkey on two occasions, once to view the products and once to finalize negotiations. The subject matter of the contract called for the shipment of shotguns to Missouri, but it also contemplated the manufacturing of shotguns to Plaintiff's specifications, with the manufacturing to take place in Turkey. While Plaintiff does business in Missouri, this factor is minimized by both ATA's connection to Turkey, Plaintiff's willingness to travel to Turkey, and the nature and the substance of the other relationships between the transaction and Turkey.

Neither party raised this issue, so the Court's view is preliminary in nature. Unfortunately, the Court has no information about the content of Turkish law, so the Court cannot decide whether Plaintiff has stated a legally cognizable claim.

6

### *2. Fraud*

While the Court harbors reservations about whether Missouri or Turkish law governs Plaintiff's fraud claim, ATA's argument addresses pleading rules that are governed by federal law regardless of the substantive law to be applied. Rule 9(b) declares that "the circumstances constituting fraud or mistake shall be stated with particularity." This requires the pleading party to specify the time, place and contents of the fraudulent statement and the person who made it. E.g., BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Plaintiff appears to rely on a general statement that ATA promised to ship the requested shotguns, contending this statement was false when made. It also appears, at times, as if Plaintiff is alleging ATA fraudulently omitted the fact that it had an agreement with another party. In short, the basis for, and the circumstances constituting, the alleged fraud are not as clear as Rule 9(b) requires.

Rather than taking the draconian action of dismissing Plaintiff's fraud claims, the Court will afford Plaintiff an opportunity to provide greater clarity. Within twenty days, Plaintiff shall file an Amended Complaint that amends Count IV to provide the specificity required by Rule 9(b) and the Eighth Circuit decisions construing it.

### C. Preliminary Injunction

Plaintiff seeks a preliminary injunction enjoining ATA from "terminating its contracts with" Plaintiff and requiring ATA "to continue to manufacture and deliver shotguns to [Plaintiff] under the terms of the parties' agreements." The standard for issuing a preliminary injunction involves consideration of the following factors: (1) the threat of irreparable harm to the movant; (2) the probability that the movant will succeed on the merits; (3) the state of the balance between the plaintiff's harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The burden on the moving party is particularly heavy where granting the motion for

7

preliminary injunction will give the plaintiff substantially the same relief as would be obtained after a trial on the merits. Sanborn Mfg. Co. v. Campbell Hausfelt/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993). Accepting the truth of Plaintiff's allegations, the Court concludes Plaintiff has not satisfied this heavy burden.

Plaintiff has not suffered irreparable harm. Accepting as true Plaintiff's claim that the shotguns are unique and the ability to "cover" is not present, the fact remains monetary damages remain available. If ATA breached a contract with Plaintiff, and if that breach caused Plaintiff to breach its contracts with customers or otherwise lose profits, those damages can be calculated and awarded. Plaintiff's argument about damage to reputation cannot justify an injunction; if it could, then purported breaches of all contracts between manufacturers and wholesalers would give rise to irreparable harm, but this is obviously not the law.

The Court cannot conclude Plaintiff is likely to succeed on the merits. First, even though the case is not being dismissed for lack of personal jurisdiction at this time, the Court remains doubtful that Plaintiff will be able to demonstrate sufficient minimum contacts between ATA and Missouri. Second, the Court is presently of the view that Turkish law governs the contractual dispute, and the Court is presently uninformed as to the content of Turkish law. Therefore, the Court is not in a position to conclude Plaintiff is likely to prevail. Finally, even if Missouri law applies, the absence of several material terms (including notably price) makes it difficult to conclude Plaintiff is likely to prevail.

The balance of harms between the parties is at least even, and arguably weighs against granting equitable relief in light of Plaintiff's request for preliminary relief that is substantially the same as the relief it would obtain at the end of case. Plaintiff risks breaching contracts to supply shotguns, but if the Court orders ATA to manufacture and ship shotguns to Plaintiff then ATA will be breaching its contract with its current customer.[3] The number of shotguns Plaintiff allegedly contracted for is near ATA's production capacity; thus, if it sells shotguns to Plaintiff it cannot sell shotguns to John

---

[3] Interestingly, Plaintiff places much stock in its loss of goodwill if it is unable to supply firearms to its customers, but ignores the possibility of ATA's loss of goodwill if it is barred from fulfilling its contractual obligations.

8

Doe Number One and would be forced to breach that contract.[4] This is a rather heavy risk for a *preliminary* injunction, particularly when the Court has serious doubts about Plaintiff's ability to prevail at the end of the case.

Ultimately, Plaintiff's request for injunctive relief rests on several propositions the Court is not able to accept, including particularly the unavailability of monetary relief if it should prevail and the likelihood of successfully demonstrating a contract existed. The Court does not agree with Plaintiff on these points, and for the reasons stated a preliminary injunction will not be granted.

### III. CONCLUSION

ATA's Motion to Dismiss is denied. Plaintiff's Motion for Preliminary Injunction is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 11, 2007        UNITED STATES DISTRICT COURT

---

[4] Even if ATA could produce enough shotguns for both customers, the requested injunction would cause ATA to breach the agreement because it establishes John Doe Number One as the exclusive American importer.

9